UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHRISTOPHER AYERS,                              Case No. 1:10-cv-30

    Plaintiff,                                       Barrett, J.
                                                Bowman, M.J.
  v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.


**REPORT AND RECOMMENDATION**

Plaintiff Christopher Ayers filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes.  For the reasons explained below, I conclude that this case should be REMANDED because the finding of non-disability is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On June 19, 2007, Plaintiff filed applications for Supplemental Security Income (SSI) and for Disability Insurance Benefits (DIB), alleging a disability onset date of May 27, 2007, due to ankylosing spondylitis and obsessive compulsive disorder (Doc. 9-8 at 3).  Plaintiff was 36 years old at the time of his alleged disability, with a high school education.  (Doc. 9-4 at 7, 9).  After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge.  (Doc. 9-6 at 17).  On April 9, 2009, an evidentiary hearing was held by video-

1

conference, at which Plaintiff was represented by counsel. (Doc. 9-4 at 2-39). At the hearing, ALJ Don C. Paris heard testimony from Plaintiff and from Martha Goze, a vocational expert.

On June 10, 2009, the ALJ entered his decision denying Plaintiff's DIB and SSI applications. (Doc. 9-2 at 19). The Appeals Council denied Plaintiff's request for review. (Doc. 9-2 at 2-4). Therefore, the ALJ's decision stands as the Defendant's final determination.

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since May 27, 2007, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: ankylosing spondylitis with symptoms of mild to moderate peripheral neuropathy and arthritis of the right wrist (20 CFR 404.1520(c) and 416.920(c)).

   ……………………..

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

   ………………………

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). The claimant can lift [sic] carry 10 pounds occasionally and less than 10 pounds frequently. He requires a sit/stand option with no prolonged standing or walking in excess of ½ hours without interruption. The claimant can only occasionally push/pull and can never operate foot pedals with the lower extremities. He is limited to only occasionally climbing of stairs and ramps and can never climb

2

>ladders, ropes, and scaffolds.  The claimant is limited to only occasional bending, twisting, stooping, kneeling, or crouching and can never crawl. He can have no continuous uninterrupted flexion or extension of the head from side to side and no more than frequent handling with the dominant right hand (handling is defined as seizing, holding, grasping, turning, or otherwise working primarily with the whole hand or hands).  He should avoid exposure to full body vibration and avoid all hazards such as unprotected heights and dangerous machinery.

(Doc. 9-2 at 11-12).  In addition, the ALJ found:

>6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
>  …………………………
>
>7.  The claimant was born on August 29, 1970 and was 36 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).
>
>8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
>9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
>10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).
>
>  ……………………….....
>
>11.  The claimant has not been under a disability, as defined in the Social Security Act, from May 27, 2007 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(*Id.* at 17-19).  Thus, the ALJ concluded that Plaintiff was not under disability as defined by the Social Security Regulations and was not entitled to SSI or DIB.

3

On appeal to this court, Plaintiff maintains that the ALJ erred: 1) by failing to find that Plaintiff met Listing 14.09(c)(2); and 2) by failing to give adequate weight to consulting physician, Dr. Lohr. Since Plaintiff challenges only the ALJ's findings concerning his physical limitations, and makes no argument concerning any mental limitations, this Court will not address the latter.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if

substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. §

5

423(d)(1)(A). In this case, Plaintiff alleges that the two identified errors require this Court to reverse the Commissioner's decision.

### B. Error at Step 3

In his first assignment of error, Plaintiff complains that the ALJ erred in concluding that Plaintiff did not meet a presumption of disability under Listing "14.09(c)(2)." A plaintiff bears the burden of demonstrating all of the required medical criteria to satisfy a listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990)("An impairment that manifests only some of those criteria, no matter how severe, does not qualify."); *Elam ex rel Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003)(insufficient for claimant to come "close to meeting the requirements of a listed impairment")(additional citation omitted).

At the time of the ALJ's decision on June 10, 2009, Listing 14.09, relating to cases of inflammatory arthritis, dictated a presumption of disability upon a showing of:

> b. Inflammatory arthritis involving the axial spine (spondyloarthropathy).
> In adults, inflammatory arthritis involving the axial spine may be associated with disorders such as:
> ...........
> ..(ii) Ankylosing spondylitis
> .........
> c. Inflammatory arthritis involving the peripheral joints....
> .........
> e. How we evaluate inflammatory arthritis under the listings.
>
>> (I) Listing-level severity in 14.09A and 14.09C1 is shown by an impairment that results in an "extreme" (very serious) limitation. ....In 14.09C1, if you have the required ankylosis (fixation) of your cervical or dorsolumbar spine, we will find that you have an extreme limitation in your ability to see in front of you, above you, and to the side. Therefore, inability to ambulate effectively is implicit in 14.09C1, even though you might not require bilateral upper limb assistance.
>>
>> (ii) Listing-level severity is shown in 14.09B, 1409C2, and 14.09D by inflammatory arthritis that involves various combinations of complications

>of one or more major peripheral joints or other joints, such as inflammation or deformity, extra-articular features, repeated manifestations, and constitutional symptoms or signs. Extra-articular impairments may also meet listings in other body systems.

20 CFR Pt. 404, Subpt. P, App. 1 §1409B (effective February 2, 2009 to November 4, 2009). On March 18, 2008, the Social Security Administration amended its regulations to clarify that the requirements of Listing 14.09C2 require "fixation 'at 30° or more of flexion (but less than 45°) measured from the vertical position (zero degrees).'" 73 FR 14570-01 (March 18, 2008). Listing 14.09C2 also requires that the ankylosis be shown "by appropriate medically acceptable imaging." *Id.*

Plaintiff was diagnosed with ankylosis through imaging studies ordered by Dr. Lohr. (Doc. 9-1 at 8, 16-18). He asserts that Dr. Schapera additionally measured Plaintiff's cervical range of motion at 30 degrees of flexion. (Doc. 9-11 at 4). He alleges that he meets the criteria of involvement of two or more body systems, musculoskelatal and neurologic, in light of the ALJ's findings and objective medical records. (*See* Doc. 9-10 at 11 (May 2, 2007 examination notes)). In addition, Plaintiff has been diagnosed with arthritis of the right wrist, which the ALJ determined to be a severe impairment. (Doc. 9-2 at 11). Plaintiff also has "mild to moderate peripheral neuropathy," confirmed by EMG testing. (*Id.*; Doc. 9-11 at 19). The ALJ determined that both qualified as "severe" impairments. (Doc. 9-2 at 11).

In determining that Plaintiff does not meet the criteria for Listing 14.09 despite his diagnosis and involvement of both neurological and musculoskelatal systems, the ALJ explained:

>The medical evidence of record establishes ankylosing spondylitis with symptoms of peripheral neuropathy, but the evidence does not satisfy the criteria of Sections 14.09 or 11.14. Specifically, the record is devoid of

7

> objective findings which establish a history of back pain, tenderness, and stiffness and findings of ankylosis (fixation) of the dorsolumbar or cervical spine at 45 degrees or more of flexion measured from the vertical position. Furthermore, the record is devoid of evidence of significant and persistent disorganization of motor function in two extremities which results in sustained disturbance of gross and dexterous movements or gait and station in spite of prescribed treatment.
>
> The medical evidence of record establishes arthritis of the right wrist, but the evidence does not satisfy the criteria of Section 1.02. Specifically, the record is devoid of evidence of a gross anatomical deformity, chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint, joint space narrowing, bony destruction, or ankylosis with an inability to perform fine and gross movements effectively.

(Doc. 9-2 at 12).

In response to Plaintiff's assertion of error, Defendant argues only that Plaintiff has misinterpreted Dr. Schapera's range of motion testing as satisfying the minimal "30 degrees of flexion" required for Listing 14.09C2. Defendant contends that Dr. Schapera did not test the fixation of Plaintiff's cervical spine, but instead measured Plaintiff's ability to *move* his neck. However, the Defendant offers no authoritative support or medical explanation to support its hypothesis. Therefore, the most this Court can conclude is that Dr. Schapera's ROM testing may satisfy the "30 degrees of flexion."

Dr. Schapera examined Plaintiff on August 6, 2007, prior to the time that Plaintiff was diagnosed with ankylosing spondylosis - a diagnosis accepted by the ALJ. Nevertheless, Dr. Schapera's notes reflect a significantly reduced range of motion in Plaintiff's cervical spine and a corresponding disturbance in Plaintiff's gait. Dr. Schapera found that Plaintiff could move his neck no more than 30 degrees forward (flexion), 30 degrees backward (extension), 5 degrees to each side, and could rotate 30 degrees to each side. (Doc. 9-11 at 4). He reported that Plaintiff had "diminished"

8

range of motion of the cervical spine, and a positive straight leg raise ("SLR") test, signifying back pain, at 50 degrees bilaterally.  Dr. Schapera also reported that the Plaintiff had a "slow unsteady gait with the use of a cane," and that he "did ambulate slowly with a cane."  (Doc. 9-11 at 3, 8).

The ALJ granted "significant weight" to Dr. Schapera's report and accepted his clinical findings as "corroborated...with testing."  The ALJ appears to have erroneously believed, however, that Listing 14.09 always requires 45 degrees of spondylosis instead of only 30 degrees.  The ALJ's conclusion that "the record is devoid of objective findings which establish a history of back pain...and stiffness and findings of ankylosis (fixation)" is contrary to the objective findings by Dr. Schapera and the additional objective findings recorded in Dr. Lohr's records.

Dr. Lohr's January 2008 notes reflect decreased range of movement in Plaintiff's cervical and lumbar spine, including a notation that Plaintiff's neck had "no extension," approximately "10° Flexion," with the "spine perm. flex."  (Doc. 9-12 at 10).  Using Defendant's own argument, Dr. Lohr's report could be interpreted as a 90 degree "fixation" of the cervical spine - far more than the 45 degrees required for a presumptive disability.  X-ray studies of Plaintiff's spine conducted on January 24, 2008 reflect "partial ankylosis to near complete ankylosis of the right sacroiliac joint," similar ankylosing spondylitis in the cervical and lumbar spine, and other abnormalities including calcification and degenerative disease.  (Doc. 9-12 at 16-18).  Dr. Lohr reported that Plaintiff "has the classic posture of ankylosing spondylitis, and does not reverse his lumbar lordosis on bending forward.  In fact his Schober test goes from 10

to 10 cm., i.e., his lumbosacral spine *does not even move*." (Doc. 9-12 at 8)(emphasis added).

The ALJ rejected Dr. Lohr's assessment of Plaintiff's residual functional capacity but accepted the diagnosis of ankylosing spondylosis made by Dr. Lohr. That diagnosis was based in part on x-rays and objective clinical findings made by Dr. Lohr, which, in combination with Dr. Schapera's consistent report of severely decreased range of motion and fixation of Plaintiff's spine, require remand for further review.

In short, substantial evidence does not support the ALJ's determination that Plaintiff has failed to show that he qualifies for a presumption of disability under Listing 14.09. The ALJ erroneously failed to consider that the Listing can be met by a showing of 30 degrees (rather than only by fixation of more than 45 degrees) and further erred in failing to address objective clinical evidence that suggested that Plaintiff may meet or equal the Listing. It is fairly debatable whether the ALJ should obtain additional evidence under the circumstances. *See* 20 C.F.R. §404.1527(c)(3)(ALJ to obtain additional evidence if he cannot make a determination on the record before him); *see also* §404.1527(f)(2)(iii). At the very least, however, further review of the referenced objective evidence in the present record is warranted.

### C. Weight Given to Dr. Lohr's Opinion

In his second assertion of error, Plaintiff complains that the ALJ gave "significant weight" to the consultative examination of Dr. Schapera but failed to afford the same weight to consulting physician Dr. Lohr. Plaintiff argues that the ALJ's reasoning for discounting Dr. Lohr's opinions was faulty, because the primary basis for rejecting her opinion was that she was only a consulting physician - just like Dr. Schapera.

The ALJ explained the basis for his acceptance of Dr. Schapera's opinion and rejection of Dr. Lohr's opinion as follows:

> As documented in her report dated April 4, 2009, Dr. Lohr evaluated the claimant only two occasions, January 24, 2008 and February 7, 2008. Subsequent to February 7, 2008, the medical evidence of record is devoid of further treatment for any impairment.  More importantly, with the exception of an emergency room visit prior to the claimant's alleged onset date, the medical evidence of record is devoid of emergency room treatment or hospitalizations secondary to exacerbated pain symptoms.  I find this lack of medical treatment is indicative that the claimant's impairments are not as severe as alleged.
>
> ...I have granted significant weight to the consultative examination proffered from Dr. Schapera...Dr. Schapera performed a thorough, well reasoned examination and corroborated his findings with testing. ...
> ........
>
> In an assessment dated April 4, 2009, Dr. Lohr opined that the claimant could stand/walk less than 2 hours in an 8-hour workday and sit 2 hours at a time for at least 6 hours in an 8-hour workday; however, he needed to shift at will from sitting, standing, and walking...Dr. Lohr further opined that the claimant needed to take hourly breaks and would need to elevate his legs with prolonged sitting.  Dr. Lohr opined that the claimant could rarely lift less than 10 pounds.  He could rarely look down and could never turn his head right or left or look up.  Dr. Lohr found that the claimant could never twist, stoop (bend), crouch/squat, climb ladders, or climb stairs; however, he had no significant limitations with reaching, handling, and fingering.  I have considered Dr. Lohr's assessment; however, I have not granted controlling weight to this assessment as Dr. Lohr was only a consulting physician.  Dr. Lohr does not have the necessary longitudinal treatment history to establish the status of a treating physician in that she only saw the claimant on two occasions on referral from his primary care physician at HealthPoint Family Care. Accordingly, Dr. Lohr has only the status of a referred specialist and lacks longitudinal treatment to be the treating source with the higher status that treating opinions are given.  Furthermore, Dr. Lohr's assessment was completed more than one year after her examination of the claimant.

(Doc. 9-2 at 16-17).

Plaintiff contends that even though Dr. Lohr and Dr. Schapera were both consulting physicians, the ALJ should have given more weight to the opinions of Dr.

11

Lohr because Plaintiff was referred to her by his treating source, and Dr. Lohr examined Plaintiff on two occasions. By contrast, Plaintiff was examined by Dr. Schapera only once, after being referred by the Social Security Administration.

Although this Court does not agree that an ALJ may not credit one consulting physician more than another, given appropriate reasons, in this case the Court will direct the Defendant on remand to more carefully assess Dr. Lohr's records. The ALJ discounted Dr. Lohr's opinion in part because he believed that her RFC assessment was completed more than one year after her examination. In fact the assessment was completed less than two months after her second examination of the Plaintiff (Doc. 9-12 at 7). In addition, the ALJ's reliance on Dr. Schapera's evaluation is somewhat undercut by the fact that, at the time of that evaluation, Plaintiff had undergone very little medical treatment and had not yet been diagnosed with ankylosis spondylosis. Dr. Schapera therefore lacked the benefit of several highly significant medical records, including Plaintiff's imaging studies.

As the ALJ noted, at the time that Dr. Schapera evaluated Plaintiff, Plaintiff was attempting to treat his symptoms with over-the-counter pain medication. Dr. Lohr immediately prescribed Humerin and Indocin, which apparently provided some relief, though Dr. Lohr's notes also reflect that Plaintiff's lack of medical insurance may inhibit his ability to obtain both prescribed medications and further treatment.

### D. Remand Not Reversal Required

Although the objective evidence supporting Plaintiff's level of impairment is significant, this is not a case that requires an automatic award of benefits. The ALJ based his assessment of Plaintiff's residual functional capacity in large part on Plaintiff's

testimony regarding his activities of daily living. See 20 C.F.R. §404.1529(c)(v); (Doc. 9-2 at 14, noting Plaintiff lives by himself, attends church twice a week, drives daily, goes to the mall and airport to watch people, and spends most of his day watching television). While providing some evidence for the functional assessment determined by the ALJ, Plaintiff's testimony and Dr. Schapera's assessment do not amount to substantial evidence in the record as a whole in light of the errors noted and the significant objective evidence that supports greater limitations. In view of the record as a whole, however, remand and not reversal provides the appropriate relief.

### III. Conclusion and Recommendation

A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases because there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175.

For the reasons explained herein, **IT IS RECOMMENDED THAT**:

1. The decision of the Commissioner to deny Plaintiff DIB and SSI benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g);

2. On remand, the ALJ be instructed to: (1) carefully review objective evidence concerning Plaintiff's ankylosis spondylosis, to determine if

13

Plaintiff meets or equals Listing 14.09 or other relevant Listing; (2) properly review all of the medical evidence and obtain additional evidence if necessary;

3. As no further matters remain pending for the Court's review, this case be **CLOSED.**

                                              */s Stephanie K. Bowman*
                                              Stephanie K. Bowman
                                              United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

CHRISTOPHER AYERS,	Case No. 1:10-cv-30

    Plaintiff,	Barrett, J.
	Bowman, M.J.
  v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

                                                                        /s Stephanie K. Bowman
                                                                        Stephanie K. Bowman
                                                                        United States Magistrate Judge